**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KEVIN LEE CARTER, | ) |
| | ) |
| Petitioner, | ) |
| | ) Case No.: **3:07-cv-0550-JPG-PMF** |
| vs. | ) |
| | ) |
| DAVE REDNOUR, | ) |
| | ) |
| Respondent. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Philip M. Frazier by United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation. At issue is Petitioner's habeas corpus petition filed pursuant to 28 U.S.C. § 2254(d).

For the following reasons, it is **RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be **GRANTED** and that three months of good conduct credit be reinstated to Petitioner. It is further **RECOMMENDED** that Respondent recalculate Petitioner's sentence in light of the reinstatement of these credits.

## FACTS

Petitioner was convicted of attempted aggravated criminal sexual assault, and on June 25, 2003, the Circuit Court of Winnebago County, Illinois imposed a 13-year sentence. Petitioner filed this habeas action on August 1, 2007, challenging the January 2006 revocation of three months of good conduct credit in a prison disciplinary proceeding (Doc. 1).

A. **Procedural History**

On June 25, 2009, the Court entered an order finding that the state court had caused an inordinate and unjustifiable delay in its collateral review of Petitioner's three month good conduct

1

credit revocation decision and that the Petitioner was therefore excused under 28 U.S.C. § 2254(b)(1)(B) from exhausting his state court remedies before proceeding with his habeas petition (Doc. 34). On April 22, 2010, the Court recommended that Petitioner's habeas petition be dismissed as moot (Doc. 49). After considering Petitioner's objection and motion to vacate the April 22, 2010 report, Judge Gilbert found that the issue was not moot and that Petitioner could proceed with this habeas petition. (Doc. 53). The Court, therefore, can now address the merits of Petitioner's claim.

### B. Substantive History

The sequence of events pertaining to the instant habeas petition, are as follows. On July 22, 2005, Petitioner filed a civil rights action in the United States District Court for the Northern District of Illinois bearing the name and case number: *Carter v. People of Illinois, et al.*, 1:05-cv-04231 (Ex. A, Doc. 14). Petitioner's action was dismissed pursuant to 28 U.S.C. 1915A by Judge Marvin E. Aspen on August 11, 2005, for failure to state a claim (Ex. A, Doc. 14). As a result, on August 31, 2005, pursuant to 730 ILCS § 5/3-6-3, a disciplinary report was generated by Menard Correctional Center ("Mendard") against Petitioner for filing a frivolous lawsuit in federal court (Ex. D, Doc. 14). An Adjustment Committee hearing was held on September 7, 2005, in which Petitioner pled not guilty to the charge of filing a frivolous lawsuit (Ex. E, Doc. 14). The Adjustment Committee found Petitioner guilty of filing a frivolous lawsuit and revoked three months of good conduct credit without calling any witnesses at the hearing (Ex. E, Doc 14). The Adjustment Committee stated that it based its decision on a "document [received] from the U.S. District Court dismissing inmate Carter's R25659 lawsuit as frivolous" (Ex. E, Doc. 14).

On September 23, 2005, Petitioner filed a grievance with the Illinois Department of Corrections ("IDOC") objecting to the Adjustment Committee's report of September 7, 2005 (Ex. F., Doc. 14). In his grievance Petitioner raised two issues; (1) that he properly requested a witness

for his September 7th hearing and that the witness was not present; and (2) there were no reasons given by the Adjustment Committee as to why the witness was not present or otherwise interviewed by the Adjustment Committee (Ex. F., Doc. 14).  On October 4, 2005 a Grievance Officer's Report was issued in response to Petitioner's September 23, 2005 grievance (Ex. G, Doc. 14).  The Grievance Officer's Report denied relief to Petitioner (Ex. G, Doc. 14).

On November 28, 2005, at the direction of the Administrative Review Board ("ARB"), the Adjustment Committee once again convened to hear and discuss Petitioner's alleged frivolous lawsuit violation (Ex. H, Doc. 14).  The November 28, 2005 hearing's final summary report indicates that no witnesses were requested and, once again, Petitioner was found guilty based upon the district court's determination that Petitioner's lawsuit was frivolous (Ex. H, Doc. 14).  Once again, a three month revocation of good conduct credit was the resulting disciplinary action.

On December 16, 2005, Petitioner filed another grievance with the IDOC stating that he was not given notice of the hearing, nor was he allowed an opportunity to be heard at the hearing (Ex. I, Doc. 14).  Petitioner also grieved that, once again, his witness was not interviewed beforehand, nor called to testify at the second Adjustment Committee hearing. *Id.*  In response to this grievance, a third Adjustment Committee was convened on January 9, 2006, to address Petitioner's frivolous lawsuit violation (Ex. K, Doc. 14).  The Final Summary Report generated by that committee reflects that the rehearing is "per the ARB for additional information" (Ex. K, Doc. 14).  At the third hearing, the Adjustment Committee again found Petitioner guilty of filing a frivolous lawsuit, but did not call any witnesses, and cited the August 11, 2005 Order of Judge Aspen as the basis for its decision to revoke three months of good conduct credit (Ex. K, Doc. 14).

For the third and final time, on January 16, 2006, Petitioner filed a grievance in response to the January 9, 2006 decision of the Adjustment Committee (Ex. L, Doc. 14).  In this grievance, Petitioner claimed that for a second time, he was not notified of the Adjustment Committee hearing,

3

and was unable to attend the hearing to give his statement or to call a witness (Ex. L, Doc. 14). A Grievance Officer's Report was generated in response to this grievance (Ex. M, Doc. 14). This February 2, 2006 report merely stated that the "Adjustment Committee relied on sufficient evidence to be reasonably satisfied the inmate was guilty" and that "no violation of the inmate's due process rights" occurred (Ex. M, Doc. 14).

In support of his Petition for Writ of Habeas Corpus, Petitioner raises the following arguments: (1) that the Adjustment Committee improperly excluded evidence; (2) that the Adjustment Committee failed to call his requested witness; (3) that the Adjustment Committee failed to give proper notice of his rehearing on two occasions; and (4) that he was unable to exhaust his remedies in state court prior to filing a writ of mandamus in Illinois state court. *See* Petition, 5-6.

## ANALYSIS

**A) Initial Revocation of Petitioner's Three Month Good Conduct Credit**

The underlying Illinois statute upon which Petitioner's three months of good conduct credit revocation was based states as follows:

> If a lawsuit is filed by a prisoner in an Illinois or federal court . . . and the court makes a specific finding that a pleading, motion, or other paper filed by the prisoner is frivolous, the Department of Corrections shall conduct a hearing to revoke up to 180 days of good conduct credit by bringing charges against the prisoner sought to be deprived of the good conduct credits before the Prisoner Review Board as provided in subparagraph (a)(8) of Section 3-3-2 of this Code. If the prisoner has not accumulated 180 days of good conduct credit at the time of the finding, then the Prisoner Review Board may revoke all good conduct credit accumulated by the prisoner.
>
> For purposes of this subsection (d):
>
> (1) "Frivolous" means that a pleading, motion, or other filing which purports to be a legal document filed by a prisoner in his or her lawsuit meets any or all of the following criteria:
>
> (A) it lacks an arguable basis either in law or in fact;
>
> (B) it is being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

4

>   (C) the claims, defenses, and other legal contentions therein are not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
>   (D) the allegations and other factual contentions do not have evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; or
>
>   (E) the denials of factual contentions are not warranted on the evidence, or if specifically so identified, are not reasonably based on a lack of information or belief.

730 ILCS § 5/3-6-3(d).

Judge Aspen, in his Order dismissing Petitioner's case, characterized Petitioner's claim as not having stated a claim for which relief may be granted, while invoking the "three strikes" section of 28 U.S.C.A § 1915(g), which states:

>   In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Judge Aspen stated that "this dismissal counts as one of plaintiff's three allotted dismissals under 28 U.S.C. 1915(g)" (Ex. A, Doc. 14). Judge Aspen believed that Petitioner's filing was frivolous in nature, and dismissed the complaint accordingly. He also properly notified the IDOC of this fact. Under Illinois law, the IDOC was within its authority to revoke up to 180 days of Petitioner's good conduct credit.

Based upon the applicable Illinois statute governing revocation of inmate good conduct credit, the revocation of three months good conduct credit from Petitioner was an appropriate response to the frivolous nature of his July 22, 2005 complaint. Nevertheless, Petitioner argues that the way in which the IDOC went about revoking those credits was in violation of his due process requirements, and therefore, he is entitled to reinstatement of his revoked good conduct credit.

5

### B) Illinois Department Of Corrections' Adherence To Petitioner's Due Process Rights

#### 1. The Prisoner's Liberty Interest In Good Conduct Credit

Prisoners, like everyone else, are entitled to the protections of the Due Process Clause of the United States Constitution. They may not be deprived of life, liberty, or property, without the due process of law. *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963 (1974). Of course, by the very nature of being incarcerated, the various rights flowing from the Due Process Clause are somewhat more restricted for lawfully committed inmates. *Id.* For example, disciplinary proceedings are not criminal prosecutions, and the full weight and force of the Due Process Clause is not quite as germane in these formats, however, there must be a mutual accord struck between the institutional needs of prisons and the general application of the Constitution to its inmates. *Id.* It is true that good conduct credit is not expressly protected by the United States Constitution, but when a state creates the right, statutorily or otherwise, to a shortened prison sentence through the accumulation of such credit, the inmate's interest in such is given real substance, and that substance is embraced within the 'liberty' protections of the Fourteenth Amendment. *Id.* at 557. As a result, to ensure that this state-created right is not arbitrarily revoked, minimum procedures under the circumstances are required by the Due Process Clause. *Id.* The Supreme Court has expressly stated that even 'statutorily state-created liberty interests' are protected interests under the Fourteenth Amendment. *Id.* at 557-58.

Here, as in *Wolff,* it is clear that good conduct credit towards an inmate's ultimate release date is a matter of considerable importance. To discount the importance of good conduct credit would be a questionable exercise of judgment for any Court. The IDOC revokes good conduct credits for "major" violations of various rules and laws, and the Illinois legislature has deemed it an appropriate response to a violation of the Unified Code of Corrections. The irrefutable conclusion is that the IDOC and the Illinois Legislature are in agreement that statutorily created good conduct

credit is of utmost importance to those who accumulate them, and should be revoked only upon adherence to due process requirements.

### 2. Due Process Requirements

#### a. Federal Due Process Requirements For Inmates

*Wolff* outlines what due process an inmate must be afforded. In that case, the Supreme Court stated that: (1) written notice of the disciplinary action must be provided to the inmate in order to inform him or her of the charges, and to enable the inmate to gather the relevant facts and prepare a defense; (2) no less than 24 hours should be given to an inmate to prepare for an appearance before the Adjustment Committee; (3) the inmate must be provided with a written statement by the fact finders as to the evidence relied upon and reasons for the disciplinary action taken; and (4) the inmate facing disciplinary action should be allowed to call witnesses and present documentary evidence in his or her defense when permitting the inmate to do so will not be unduly hazardous to the safety or goals of the institution. *Wolff* at 564-66. *Wolff* also gives prison officials the necessary discretion to refuse to call any witnesses that may create a risk of reprisal or undermine authority, and to limit the access one inmate has to other inmates for the collection of documents. *Id.* at 566.

#### b. Illinois' Stated Due Process Requirements For Inmates

Illinois' procedures are clearly a reflection, and in some ways, an addition, to the *Wolff* requirements, and can be found at 20 Ill. Adm. Code 504.80 *et seq*. The provisions relevant to the case at hand include the following:

(1) Written notice must be given to the inmate no less than 24 hours prior to the scheduled hearing. 20 Ill. Adm. Code § 504.80(b).

(2) Any offender charged with a violation of any rules shall have the right to appear before and address the Committee. 20 Ill. Adm. Code § 504.80(f).

7

(3) The offender may make a statement and present documents. 20 Ill. Adm. Code § 504.80(f)(1).

(4) Prior to a hearing, the offender may request that witnesses be interviewed, with such a request being made in writing.  20 Ill. Adm. Code § 504.80(f)(2).  If not done prior to the hearing, and for good cause shown, the offender may be granted a continuance. *Id.*

(5) The Committee shall consider all material presented that is relevant. 20 Ill. Adm. Code § 504.80(g).

(6) The Committee shall consider any witness statements with relevant knowledge. 20 Ill. Adm. Code § 504.80(h).

(7) The Committee can interview a witnesses prior to, at, or subsequent to, the hearing. 20 Ill. Adm. Code § 504.80(h)(1).

(8) If any witness request is denied, a written reason shall be provided. 20 Ill. Adm. Code § 504.80(h)(4).

(9) At least one person on the Adjustment Committee shall hear the in-person testimony of the offender's witness when a timely request for a witness has been provided.  20 Ill. Adm. Code § 504.80(h)(5).

### c.  The Application of Due Process to Petitioner Carter

Both the Illinois regulations and the Supreme Court in *Wolff* have stated what minimum due process is required.  At a minimum, Petitioner was to be given (1) adequate notice; (2) an opportunity to be heard at the Adjustment Committee; (3) an opportunity to call a witness; and (4) a written statement from IDOC describing why, if applicable, his request for a witness was denied. The facts available to this Court lead to the conclusion that a violation of Petitioner's due process did, in fact, occur.

The original Adjustment Committee hearing held on September 7, 2005, by itself, was not deficient in its adherence to the due process rights of Petitioner.  Petitioner was given adequate notice, an opportunity to be heard, the right to call a witness, and a final written ruling.  The only argument Petitioner can muster against this first Adjustment Committee hearing is that he was denied an opportunity to present a witness, which he allegedly asked for in advance.  Even if Petitioner adequately requested this witness – and he presents no evidence showing that he did so – there may have been sufficient evidence, including Judge Aspen's Order, to find that Petitioner was deserving of a revocation of good conduct credit.  Nevertheless, after the ARB reviewed the matter, it ordered a rehearing by the Adjustment Committee, which occurred on November 28, 2005.

The Adjustment Committee's first rehearing is where liberties where taken with Petitioner's due process rights.  Petitioner claims, and it is not denied by Respondent, that he was not given any notice or an opportunity to be heard at the second Adjustment Committee hearing.  Respondent instead argues that Petitioner had adequate notice of the factual circumstances because they were adequately described in the original disciplinary charges (Doc. 35 at C).  In other words, Respondent argues that because Petitioner knew about the *original* hearing, notice of the subsequent rehearing was unnecessary.  This argument is hard to reconcile in light of *Wolff* and the applicable Illinois regulations.

*Wolff* clearly announced that written notice must be given to an inmate, and that adequate time must be granted to prepare for a hearing before the Adjustment Committee. *Wolff* at 564. Also, under IDOC's own regulations a prisoner is entitled to notice and an opportunity to appear before the Adjustment Committee.  Respondent cites to *Northern v. Hanks,* 326 F.3d 909 (7th Cir. 2002) and *Holt v. Caspari,* 961 F.2d 1370 (8th Cir. 1992) in support of his argument that *original* notice is all that is required.  These cases are distinguishable from the case at hand.

In *Northern*, the inmate was apprised of *all* possible charges that might be brought against him when he was given notice of his upcoming hearing. *Id.* at 910. It was this notice that the inmate used to prepare for his defense at the hearing, yet at the hearing he decided to only defend himself against one particular charge. *Id.* It wasn't until after the hearing that the charges were altered, but the alteration was within the boundaries of the notice that the inmate was given prior to the hearing. *Id. Caspari* is similarly distinguishable from the case at hand. In that case, like in *Northern,* the inmate was told about *all* of the charges that might be brought against him and it was not until after his hearing, in which he was present and allowed to speak, that the charges were elevated from possession of contraband to possession of *dangerous* contraband. *Caspari* at 1371. At all times, the inmate in *Caspari* was able to be heard and defend himself against all possible charges being brought.

Here, Petitioner was not given the same due process as the inmates in *Northern* and *Caspari*. With respect to the second and third Adjustment Committee hearings, Petitioner was neither given notice of these hearings, nor given an opportunity to speak or call witnesses at these hearings. Further, Petitioner was denied a written report stating why his witness was not properly called or interviewed.

Additionally, in the Adjustment Committee's report of November 28, 2005, under the section entitled "Record of Proceedings," the Committee states that "due to ARB this IDR is being reheard" (Ex. H, Doc. 14). Also in the January 9, 2006, rehearing the Adjustment Committee, under the section "Basis for Decision," states: "this IDR is being reheard per the ARB for *additional information*" (Ex. K, Doc. 14) (emphasis added). When the ARB requested that the Adjustment Committee hold these second and third hearings, it appears to have been looking for something more than what was previously provided by the Committee.

10

It is hard to believe that the Adjustment Committee felt they were gathering additional information by merely rehashing the only information available to them; the first Adjustment Committee findings.  The record does not state what type of additional information the ARB requested that the Committee search for on remand, yet, it is clear to this Court that a rubber stamp on the first Adjustment Committee's findings was not an appropriate response to this request.  At a minimum, Petitioner should have been notified of the second and third hearings, allowed to be present and heard at these hearings, and denied, in writing, of his requested witnesses.  This is the minimum that is required under *Wolff* and applicable Illinois Regulations.  To say that Petitioner was aware of the subsequent proceedings because he was given notice of the original proceeding is not persuasive.  Petitioner was not given the process that he was due.

In light of the way the Adjustment Committee conducted the second and third re-hearings, it is evident that a violation of the inmate's rights occurred.  Given the history of the Adjustment Committee's failure to follow the applicable regulations, and the fact that Petitioner's term of mandatory supervised release is projected to end on November 26, 2010,[1] it appears highly unlikely that merely remanding this case to be reheard by the Adjustment Committee would provide Petitioner with any relief from his prior due process deprivations.

## RECOMMENDATION

For the reasons set forth above, it is **RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be **GRANTED** and that three months of good conduct credit be reinstated to Petitioner.  It is further **RECOMMENDED** that Respondent recalculate Petitioner's sentence in light of the reinstatement of these credits.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1 (b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objections thereto.  The

---

[1] *See* Illinois Department of Corrections Website regarding Petitioner
http://www.idoc.state.il.us/subsections/search/inms.asp (Carter, Kevin – R25659).

failure to file a timely objection may result in the waiver of the right to challenge this recommendation before either the District Court or Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**SO RECOMMENDED.**

**SUBMITTED: July 23, 2010.**

> */s/ Philip M. Frazier*
> **HON. PHILIP M. FRAZIER**
> **UNITED STATES MAGISTRATE JUDGE**